[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12667
Non-Argument Calendar
_____

Agency No. A077-888-288

RAFAEL EMILIO ARCILA PEREZ,
EMILY GABRIELA ARCILA HERRERA,
RAFAEL EDUARDO ARCILA HERRERA,
RAFAEL ENRIQUE ARCILA HERRERA,
YENNY GRACIELA HERRERA PARRA,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 23, 2014)

Before PRYOR, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Rafael Arcila Perez, his wife Yenny Herrera Parra, and their children, Rafael Enrique Arcila Herrera, Rafael Eduardo Arcila Herrera, and Emily Arcila Herrera, all natives and citizens of Venezuela, seek review of the Board of Immigration Appeals' ("BIA") final order affirming the Immigration Judge's ("IJ") denial of their applications for asylum, withholding of removal, and relief under the United Nations Convention Against Torture ("CAT").  The petitioners do not challenge the denial of their claims for asylum and CAT relief.  They do challenge, however, the denial of their claims for withholding of removal, on two grounds.  First, they argue that the IJ's adverse-credibility determination was erroneous, and that, by not reviewing the IJ's credibility finding, the BIA violated their rights under the Fifth Amendment's Due Process Clause.  Further, the petitioners also argue that the IJ and the BIA erred in finding that they did not establish past persecution or a clear probability of future persecution.

I.

We review *de novo* our own subject-matter jurisdiction.  *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1231 (11th Cir. 2007).  An alien applying for asylum must demonstrate "by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United

2

States."  8 U.S.C. § 1158(a)(2)(B).  An untimely asylum application can be considered upon a showing of changed circumstances that materially affect eligibility or extraordinary circumstances relating to the delay.  *Id.* § 1158(a)(2)(D).  We are precluded, however, from reviewing the BIA's determination regarding the timeliness of an asylum application or whether an applicant demonstrated changed or extraordinary circumstances to allow for a late filing.  *Id.* § 1158(a)(3); *see Sanchez Jimenez*, 492 F.3d at 1231.  Additionally, we lack jurisdiction to consider a claim that was not raised before the BIA, even when the BIA *sua sponte* considered the claim.  *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006).

The IJ determined that the petitioners were not eligible for asylum because they did not apply within one year of their arrival in the United States, and they did not demonstrate any extraordinary circumstances that could excuse their delay. The BIA, noting that the petitioners had not challenged the IJ's dismissal of their asylum claim, affirmed the IJ's dismissal of that claim.  Consequently, we lack jurisdiction over the petition for review of the denial of the petitioners' asylum claim.  *See* 8 U.S.C. § 1158(a)(3); *Sanchez Jimenez*, 492 F.3d at 1231.  Similarly, as the petitioners failed to challenge the IJ's denial of their CAT claim before the BIA, their CAT claim is not exhausted, and we lack jurisdiction to consider it.  *See*

3

*Amaya-Artunduaga*, 463 F.3d at 1250.  Accordingly, we dismiss the petition for review as to the petitioners' claims for asylum and CAT relief.

## II.

When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's decision.  *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).  Additionally, we review constitutional challenges, including alleged due process violations, *de novo*.  *Lapaix v. U.S. Att'y Gen.*, 605 F.3d 1138, 1143 (11th Cir. 2010).

The Fifth Amendment right to due process applies to non-citizens in removal proceedings.  *Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 1449, 123 L.Ed.2d 1 (1993).  "In order to establish a due process violation, an alien must show that he was deprived of liberty without due process of law, and that the asserted error caused him substantial prejudice."  *Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1333 (11th Cir. 2003) (citation omitted).  To establish substantial prejudice, an alien must demonstrate that "the outcome would have been different" had the alleged violation not occurred.  *See Ibrahim v. I.N.S.*, 821 F.2d 1547, 1550 (11th Cir. 1987).

The BIA did not err by failing to review the IJ's finding that Arcila Perez's testimony was not credible.  The BIA found that, even presuming that Arcila Perez's testimony was credible, he still failed to demonstrate either past

persecution or a clear probability of future persecution.  Thus, the BIA did not address the IJ's adverse-credibility finding.  As such, the issue of whether that finding was erroneous is not properly before us.  *See Al Najjar*, 257 F.3d at 1284.  Further, while the petitioners assert that the BIA was under a "mandate," pursuant to 8 C.F.R. § 1003.1(d)(3)(i), to review the IJ's adverse-credibility determination, the BIA was under no such obligation.  *See* 8 C.F.R. § 1003.1(d)(3)(i) (providing not that the BIA must review the IJ's credibility findings, but rather that the BIA reviews such findings under a clear-error standard of review).  Finally, because the BIA did not adopt the IJ's adverse-credibility finding, but rather presumed that Arcila Perez's testimony was credible, the petitioners were not prejudiced by the IJ's original adverse-credibility determination.  *See Ibrahim*, 821 F.3d at 1550.  Accordingly, they cannot establish a due process violation in this respect.  *See Gonzalez-Oropeza*, 321 F.3d at 1333.

## III.

As noted above, we review the BIA's decision as the final judgment unless the BIA expressly adopted the IJ's decision. *Al Najjar*, 257 F.3d at 1284.  When the BIA explicitly agrees with the findings of the IJ, we will review the decision of both the BIA and the IJ as to those issues.  *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010).  Because the BIA issued its own opinion in this case, we

review the BIA's opinion.  *See Ruiz v. Gonzales*, 479 F.3d 762, 765 (11th Cir. 2007).   Further, because the BIA explicitly agreed with the IJ's finding that Arcila Perez demonstrated neither past persecution nor a clear probability of future persecution, we review the decisions of both the BIA and the IJ as to those issues. *Ayala*, 605 F.3d at 948.

We review factual determinations under the substantial-evidence test.  *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1254-55 (11th Cir. 2006).  The substantial-evidence test requires us to "view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*).  We must affirm the BIA's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Ruiz*, 440 F.3d at 1254-55 (quotations omitted).  Accordingly, in order for us to conclude that a finding of fact should be reversed, we must determine that the record "compels" reversal. *Id.* at 1255 (quotations omitted).

Under the Immigration and Nationality Act ("INA") § 208(a), 8 U.S.C. § 1158(a), an alien shall not be removed to a country if his life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.  INA § 241(b)(3), 8 U.S.C. § 1231(b)(3).  Where an alien requests withholding of removal, he has the burden

6

of proof to show his eligibility for such relief under the INA.  8 C.F.R. § 208.16(b); *see Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005).  An applicant for withholding of removal may satisfy this burden in one of two ways. *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006).  First, he may attempt to establish past persecution based on a protected ground.  *Id.*  In order to establish eligibility for withholding of removal in this way, the alien must demonstrate that the past persecution was "at least in part" motivated by a protected ground.  *Id.*  In determining whether an alien has suffered past persecution, the factfinder must consider the cumulative effect of any allegedly persecutory incidents.  *Delgado v. U.S. Att'y Gen.*, 487 F.3d 855, 861 (11th Cir. 2007).

If an alien fails to establish past persecution, he may still be eligible for withholding of removal if he can show that it is "more likely than not" that, upon returning to his native country, he would be persecuted on the basis of a protected ground.  *Tan*, 446 F.3d at 1375 (quotations omitted).  This standard is more stringent than the "well-founded fear of future persecution" required for asylum. *Id.* (quotations omitted).

In defining persecution, we have repeatedly stated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution."

7

*Sepulveda*, 401 F.3d at 1231 (quotations and alterations omitted).  Further, we have held that mere threats also do not constitute persecution.  *See Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1237 (11th Cir. 2006) (concluding that a threatening "condolence note" and other threatening phone calls, without more, were mere harassment, rather than persecution).  Moreover, private acts of violence and general criminal activity do not qualify as persecution based on a statutorily protected ground.  *Ruiz*, 440 F.3d at 1258.  We have held, however, that intentionally being shot at can constitute past persecution, even if the attempt was unsuccessful.  *Sanchez Jimenez*, 492 F.3d at 1233 (concluding that "attempted murder is persecution").

The factual context underlying our decision in *Sepulveda* bears several similarities to the facts in this case.  In *Sepulveda*, the petitioner was a former political activist in Colombia who had received threatening phone calls from a Colombian guerilla group.  *Sepulveda*, 401 F.3d at 1228-29.  The callers identified Sepulveda by name, and they used profanity, told her to stop her political activity, and made death threats.  *Id.* at 1229.  The political group of which Sepulveda was a member also received threats.  *Id.*  The guerilla group also planted a bomb that exploded inside the restaurant where Sepulveda worked.  *Id.*  The guerillas also threatened her brother.  *Id.*  We concluded that neither the restaurant bombing nor the threats made against Sepulveda, her political group, and her brother rose to the

8

level of persecution sufficient to compel reversal of the IJ's decision. *Id.* at 1231.

In support, we noted that, while the record permitted a conclusion that the

restaurant bombing was directed at Sepulveda on account of her political activity,

it did not compel such a conclusion. *Id.*

With regard to future persecution, an alien's voluntary return to his home

country is a relevant, though not conclusive, consideration in evaluating his

persecution claim. *De Santamaria v. U.S. Att'y Gen.*, 525 F.3d 999, 1011 (11th

Cir. 2008) ("Voluntary returns to a home country may weaken or undermine an

applicant's claim of persecution."). Further, the fact that a petitioner has close

family living unharmed in the region of the home country to which the petitioner

fears returning also contradicts a claim of future persecution. *Ruiz*, 440 F.3d at

1258-59.

Additionally, the applicant must establish a sufficient nexus between a

protected ground and his alleged persecution. *Rodriguez Morales v. U.S. Att'y*

*Gen.*, 488 F.3d 884, 890 (11th Cir. 2007). Specifically as to persecution on the

basis of political opinion, the alleged persecution must be on account of the

victim's political opinion, not the persecutor's. *Sanchez v. U.S. Att'y Gen.*, 392

F.3d 434, 437-38 (11th Cir. 2004).

Substantial evidence supports the IJ's and the BIA's conclusion that Arcila

Perez did not satisfy his burden of proof on his withholding-of-removal claim.

9

First, substantial evidence supports the IJ's and the BIA's finding that the incidents described by Arcila Perez did not rise to the level of past persecution. To the extent that Arcila Perez sought to rely on the insults and threats that he and his family received, and on his being pushed at the political rally, the IJ and the BIA correctly concluded that none of these incidents amounted to persecution. *See Silva*, 448 F.3d at 1237; *Ruiz*, 440 F.3d at 1258; *Sepulveda*, 401 F.3d at 1231. Furthermore, to the extent that Arcila Perez relied upon a confrontation with five men, one of whom was armed, as constituting persecution, substantial evidence supports the IJ's conclusion that this incident also did not qualify as persecution. Arcila Perez did not testify that any of the men pointed a gun at him, attempted to shoot him, or threatened to shoot him. As such, the IJ correctly concluded that this incident did not rise to the level of persecution. *See Sanchez Jimenez*, 492 F.3d at 1233.

Further, substantial evidence also supports the IJ's and the BIA's conclusion that Arcila Perez did not establish a clear probability of future persecution if he were to return to Venezuela. First, that Arcila Perez voluntarily returned to Venezuela, shortly after his relocation to the United States, weakens his claim that there is a clear probability of future persecution. *See De Santamaria*, 525 F.3d at 1011. Additionally, that one of Arcila Perez's sons remained unharmed in Venezuela also serves to contradict his claim of a clear probability of future

persecution.  *See Ruiz*, 440 F.3d at 1258-59.  Furthermore, while Arcila Perez asserted that he would be targeted upon his return to Venezuela because of his voting record against President Hugo Chavez, he offered no evidence that he would be specifically targeted in Venezuela, for this or any other reason. Accordingly, substantial evidence supports the IJ's and the BIA's determination that Arcila Perez failed to establish that it was "more likely than not" that he would be persecuted if he returned to Venezuela.  *See Tan*, 446 F.3d at 1375.

Finally, while the other petitioners each filed an individual application for withholding of removal, none of them introduced any additional evidence or testimony of persecution.  Rather, they merely reiterated Arcila Perez's claims verbatim.  Therefore, as Arcila Perez failed to establish that he was entitled to withholding of removal, the IJ and the BIA properly found that the other petitioners had also failed to demonstrate that they were entitled to such relief.  For these reasons, we deny the petition for review as to the petitioners' claims for withholding of removal.

**PETITION DISMISSED, IN PART, AND DENIED, IN PART.**

11